Our first case today is 2016-2416 In Re Intellectual Ventures. Mr. Petrie, please proceed. Thank you. Good morning, your honors. May it please the court. I'd like to focus on what I think is the clearest error by the board, and that is that there is no substantial evidence to support a finding of a motivation to combine Kohayashi and Obradovich. The board's decision does not cite any evidence to support such a finding, and the evidence that is of record, specifically the teaching of Kohayashi itself, directly contradict any finding of a motivation to combine. If the court agrees with us on this point, the board's decision should be reversed, and the court need not reach the other issues that we raised in the appeal, including whether Kohayashi teaches away from the combination with Obradovich. I think the issues regarding the motivation to combine are straightforward. Claim one requires a detachable handset unit that has circuits, including at least a video interface, a communication interface, and a data input interface. The examiner and the board here are relying on Kohayashi's personal processor module, or the PPM, as meeting this detachable handset unit limitation. However, both the examiner and the board concede that Kohayashi's PPM does not have the interfaces that are required by claim one. So the obvious objection here is to modify Kohayashi's PPM to include the interfaces that are shown in Obradovich. And the critical issue on this appeal is, would one of ordinary skill in the art have been motivated to add interfaces from Obradovich to the PPM of Kohayashi? Now, there are three paragraphs in the board's decision where it identifies what it characterizes as additional functionalities that Kohayashi's PPM would have if these interfaces were incorporated into it from Obradovich. And I'd like to focus on each one of those paragraphs, because none of the findings in those paragraphs are supported by substantial evidence. So first on appendix page eight in the middle of the page, the paragraph in the middle, the board states that adding IO interface components to Kohayashi's processing unit, as taught, for example, by Obradovich, merely allows Kohayashi's system to be independently operable in addition to being used with each docking station. Now, as you see, the board doesn't cite any evidence to support that finding, that Kohayashi would be independently operable. And in fact, the evidence that is of record, namely the teachings in Kohayashi itself, directly contradict the statement by the board. Now, Kohayashi's PPM is adapted so that a user can carry it around and connect it to one docking station or another docking station in different computer configurations. And because it's supposed to be easily portable, it includes the minimum number of components in this PPM that make it personalized for the user, specifically processor and logic, memory, and mass storage that would have the user's software on it. And all the rest of the components that make the computer system functional are located in the docking station. And I think this is the critical disclosure that shows why there would not be a motivation to add these interfaces to Kohayashi's PPM. So apart from the processor and logic and the memory and mass storage, everything else is in the computer system, including the power supply for the system. And Kohayashi repeatedly explains this. Column 6, lines 27 to 29, the PPM expressly does not include a power supply sufficient to support normal operation of the processor and other logic. Kohayashi, column 5, lines 64 to 66. He describes that the docking station includes a power supply that powers the entire system, both the docking station and the PPM. And finally, I think it's the clearest example, column 6, lines 36 to 38, the PPM2 does not contain a power supply for the system, nor human interface units, and therefore always needs a docking station to work with. So all those teachings in Kohayashi to show that it always needs a docking station to work with directly contradict the board's finding that somehow adding these interfaces to Kohayashi's system would make it independently operable. Kohayashi's PPM doesn't work unless it's connected to a docking station. So the board was simply wrong in saying that it could be independently operable. The next paragraph on page 8, at the bottom of page 8 of the appendix, the board talks about additional functionalities that are in Obradovich. And on the top of appendix page 9, the board suggests that if the interfaces were included from Obradovich to the Kohayashi PPM, the Kohayashi PPM would also have these additional functionalities of Obradovich. But again, the board doesn't cite any evidence to support its conclusion that the PPM itself would have these functionalities just because the interfaces were added to it. And as I already mentioned, Kohayashi already describes how the PPM cannot function or does not work unless it's connected to a docking station. And so regardless of whether there's any additional interfaces that are added from Obradovich, Kohayashi's PPM wouldn't have the additional functionality of Obradovich. And then since also the docking station already has all the rest of the components of the system, there could be no motivation to add the interfaces to the PPM. And then finally, on appendix page 9, the board includes kind of a summary paragraph where it repeats these additional functionalities. Independently operable, detachable handset unit, more robust portability as taught by Obradovich. And here again, the board doesn't cite any evidence to support those findings. And the board also, and as I mentioned before, they're also specifically contradicted by the teachings of Kohayashi. And then the board does also refer at the bottom of this paragraph on page 9 to some of the examiner's findings where it would achieve cellular communication capability and more robust portability. But as I already mentioned, Kohayashi's clear that his PPM doesn't function unless it's connected to a docking station. Therefore, there is no evidence to support that this putting the interfaces in the PPM would give it cellular communication capability or more robust portability. I don't understand. Kohayashi doesn't say it doesn't function unless it's attached to the docking station. My recollection is it says normally the power source is in the docking station. Implicit in that is that it doesn't have to be. And are you suggesting to me that a skilled artisan at this particular point in time would not know how to power a handset absent the docking station? Clearly, Obradovich does that. So I guess I'm wondering, are you just making a technical argument that Kohayashi does not itself disclose power in the handset and therefore nobody would put any of the processing there? A couple of points on that. First, there is an express disclosure in Kohayashi, and this is at column 6, lines 36 to 38. In the preferred embodiment? Yeah, go ahead. That the PPM does not contain a power supply for the system nor human interface units and therefore always needs a docking station to work with. So that's not just reciting a preferred embodiment that sometimes it might need a docking station and sometimes it doesn't. He says it always needs a docking station to work with. And in fact, in his specification, he specifically distinguishes from prior art devices that had power in them. And he called them the brick or the Moby brick. And he said that those were too big to carry around with you and they'd be no better than just having a notebook computer. And so he avoided having a power supply in his system in order to have this small, compact unit that could be moved from docking station to docking station. That had the minimum number of components in order for it to have personal processing capabilities. Now, in the solicitor's brief, they do make the argument that, oh, well, they kind of allege that we didn't show that it was beyond the skill of someone skilled in the art to ordinary skill in the art to incorporate a power supply into Kohayashi's PPM. But that's flipping the burden of proof here. It's not our burden to show that someone could have done it. It's the office's burden to show that. Doesn't O. Brodovich have a power supply in the portable device? Yes. So there are two references that amount to the combination. I don't know. Does the office have to show that one of them has it if the other one does? I think the critical thing here is, would it have been obvious to one of skill in the art to incorporate a power supply into Kohayashi's PPM? The fact that there was all these other devices out there that had... Yeah, but I think that the problem I'm having is your argument that somebody had to prove that one of skill in the art would know how to put a power supply in a processor is defied by... It doesn't seem to me that is a basis that anybody held anything in this case because one of the two references used in the obviousness rejection has it. So clearly, one of skill in the art knew how to do that. It's disclosed in one of the references. The key thing to keep in mind is the claim that we're talking about here has this detachable handset unit and it's adapted to be attached to this portable docking display unit. So the closest that the office came up with was this Kohayashi system with this PPM and the docking station. So that's the context of what we're looking at is, would it have been obvious in Kohayashi's system to put a power supply into this PPM? And then Kohayashi says no. He says it always needs a docking station to work with. And he specifically distinguished those devices that were out there that had power supplies in them, saying they were the brick or the Moby brick. And I don't want to do that. I want to keep the components in this PPM to the minimum to allow for personal processing capabilities. And adding power supply, adding these additional features, that's not what Kohayashi says to do. And therefore, it really, it doesn't, I would submit it doesn't matter that there were these prior art devices that had power supplies because they weren't being used in a system like Kohayashi's. Okay, would you like to save the remainder of your time for the final? Yes, your honor. Let's hear from the government. May it please the court. Claim one of the 462 patent simply takes, it doesn't claim to have invented the handset, the portable handset, interface devices, or a docking station. It's simply taking the known elements and using them in their known function for their known purpose. It's just rearranging the deck chairs. I mean, if you look at Kohayashi, if you look at the prior art to Kohayashi, all of them are talking about portable devices with interfaces, keyboards, screens. They're talking about docking stations that you can then connect those devices with to make them more usable, maybe a bigger screen, bigger keyboard, whatever it is. This is really about design choices. Kohayashi recognizes that all the prior art devices, they have these input-output devices. It makes them more user-friendly, but perhaps, in his view, a little bit bulky to be portable. Remember, Kohayashi is 1993. So he says, I'm going to discard some functionality in favor of portability. So he takes those input-output devices, screens, keyboards, he puts them on his docking station to make his portable device more portable. But Obradovich is doing the exact opposite. Obradovich is favoring functionality over portability, perhaps by saying, I want my portable handset device to have these screens, to have these keyboards, because you can do more with it. Give it cellular capability. Give the users what they want. They want access to up-to-date information. So this is just artisans taking what's already out there and rearranging it in the way that suits their particular direction. And this is exactly what the examiner and the board explained when they explained why one ordinary skill in the art would have combined the teachings of Kohayashi and Obradovich. The increased functionality that comes, almost inherently, from having screens and keyboards on Obradovich, you put them on Kohayashi, you have a more user-friendly device. If the board specifically cited to Obradovich at appendix page 443, column 2, lines 53-56, where Obradovich teaches that his personal device has interfaces that combine the capabilities of a GPS receiver, a cell phone, all of these things into one device. So many more things for the user to use because it has these capabilities. Secondly, they pointed to Obradovich at page 443, column 1, line 13-18. Users desire the up-to-date information access that the cellular capabilities give them. That's why one ordinary skill in the art would have taken those interfaces and put them on Kohayashi's device. But the board didn't cite that. They did, Your Honor. Where did the board explain that users prefer that and that's why they would have done that? So at appendix pages 8-9, the board is making the findings that underlie its conclusion on page 9 about why one ordinary skill in the art would have had the motivation to combine the teachings of Kohayashi and Obradovich. Starting at the first whole paragraph on appendix page 8, the board makes sort of an initial finding that says, look, Kohayashi's focus on making the portable device more portable isn't focusing on the separation of devices. It's focusing on keeping them all on one device. And so moving into the next paragraph, the board says, Kohayashi expressly teaches the desirability of a flexible system that could be used with different types of docking stations. So moving on to Obradovich, it says, at the bottom of appendix page 8, Obradovich, this is a quote, Obradovich teaches a processing unit including I-O interface components that provides additional functionality, such as one that combines the capabilities of a cell phone and a GPS receiver. Citing the language from Obradovich. I'm sorry, I can't actually follow where you are. You said you're in the bottom of appendix page 8 and the sentence began, Obradovich teaches? I can't find that. For example, Obradovich teaches a processing unit. And then at the end of the site it says, the answer is page 36. And Obradovich at column 2 lies 53 to 56, which is where I just directed the court. That's appendix page 443. Then in the next sentence, the board quotes from Obradovich, it says, Obradovich further notices, notes, that quote, people want to be well-informed, end quote. And that quote, availability of up-to-date information is more important today than ever, end quote. Citing column 1 in Obradovich, which was the second site that I provided. So, moving into the next paragraph on appendix page 8, given these teachings, quote, of Kobayashi and Obradovich, it would have been readily apparent to the skilled arson at the time to modify Kobayashi to add the interface of Obradovich. That is the board's motivational findings in its conclusion. It's supported by the references themselves. So, the additional finding that the board made about independent operability, and we addressed this in our brief at pages 16 to 18, as an initial matter, this focus on a battery, a battery is actually not a claim element of claim war. Second, the point we made in our brief, that there's no evidence that it wouldn't have been beyond the ordinary skilled artisan's ability to take the already known batteries and devices like Obradovich and put them in Kobayashi if they wanted, was simply the observation that if you're moving the interfaces and you need a battery to use them, it seems almost as a matter of practicality that they would have put the battery in there as well. And on the teaching away point, the teaching away law requires something more than a preference for a particular orientation. And particularly in an art like this, as the references teach, this is a pretty crowded field. Kobayashi's, the prior art of Kobayashi, Kobayashi, Obradovich, they're all moving around three or four different things to suit their particular orientation and design needs. So, there's no reason to think that Kobayashi's preference for moving the devices off the handset to the docking station would have dissuaded an artisan from doing what Obradovich is doing, which is putting the devices on the handset. So, if there are no further questions from the court, I'll yield the remaining time. So, just a couple of points regarding Kobayashi. I think it's important to keep in mind that when looking for a motivation to compine, I believe you have to consider what the teachings of Kobayashi actually are. And Kobayashi says, the PPM does not contain a power supply for the system, nor human interface units, and therefore always needs a docking station to work with. And so, that directly contradicts all of the court's findings about all these additional points. All these additional functionalities that might be there, and that might have existed in Obradovich and all these other devices. Kobayashi is saying, I don't have those in my unit. I always need a docking station to work with. And that ties right into the teaching away point. His goal is to make this easily portable, and he does that by minimizing the number of components that are on this PPM. And he limits it to just the bare minimum of a processor and logic, storage, and memory, and mass storage. And that gives this PPM the personal processing capability. Well, so I guess here's the problem. Kobayashi is a 1995 reference. It came out in 1995. And it's true that he expresses a preference and or a distaste, either way you could frame it, for the idea of having the battery in the handset. Because the batteries were really big and bulky, and would have caused the device to be much larger. But as you move forward in time, to the time of Obradovich, which is 2000, at this point, you're getting, everything's getting smaller. I mean, every year things shrink, right, in the electronics industry. So, as you're moving forward, if it is the case that people overcame the big battery problem and figured out how to make small little batteries that could be, therefore, more portable, you've got to read Kobayashi and its docking station technology as not being receptive to that, so long as the new system didn't create the problem of, it's going to be so large, it's going to be like hauling a laptop around. Do you understand? That was his concern. His concern was, batteries are too big. And if I put the power in the handset, it's going to be way too big. But as you move forward in time and things shrink and get smaller, maybe the new technology allows for the utilization of his docking station, but with smaller, more compact, portable devices, even though they have a battery. Why is it not okay to use a reference in that way? It's almost like you think because the reference stuck in time in 1995 teaches a way for one reason, even if later references can overcome that reason, you can't use it. Well, there's a couple of, I have a couple of responses to that. First, there's no evidence. And I'm going to give you the lecture time because that took way too long to get that question out. I was almost wrapped up anyway. A couple of responses. There's no evidence in the record that it would have been obvious or within the abilities of someone skilled in the art to have a power supply on the Kobayashi PPM at the time of the invention that would make Kobayashi's docking station operable. I mean, there's no evidence that Obradovich has the technology or the power supply that would make Kobayashi's docking stations operable. So there's simply no evidence on that point. You're assuming a single power supply. Why can't there be a power supply in the docking station and a power supply in the PPM? So the PPM can act independently and the docking station has a source of power. I think, again, that Kobayashi itself teaches a way from doing that because he's limiting the, he says there is no power supply on it. And I think this is like a new ground of rejection, if you will, that we're not just putting these Obradovich interfaces on here. We're now going to add a power supply in order to power up those interfaces. And that wasn't a finding by the board. And that was never alleged by the solicitor. I'm sorry, neither the board nor the examiner made that argument. Okay, thank you. Mr. Petrie, I think we have your argument. I thank both counsel. The case is taken under submission.